# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE WESLEY WELLS,<br><br>          Petitioner,<br><br>     v.<br><br>K. MENDOZA-POWERS,<br><br>          Respondent.                              / | CV F   07-0926 AWI SMS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR), serving a conviction from the Los Angeles County Superior Court for second degree murder with a firearm enhancement.  He was sentenced to life with the possibility for parole.  (Exhibit 1, attached to Answer.)

In the instant petition, Petitioner does not challenge the constitutional validity of his conviction and/or sentence; rather, he challenges the Board of Parole Hearings' (BPH), June 15, 2005, decision finding him unsuitable for parole.[1]

Petitioner filed a state petition for writ of habeas corpus in the Los Angeles County

---

[1] The Court notes that the instant petition is limited to Petitioner's challenge to the 2005 parole hearing only, and any attempt by Petitioner to expand his arguments to challenge his subsequent 2007 parole hearing is not subject to review in this proceeding.

Superior Court on March 21, 2006, which was denied in a reasoned decision on February 5, 2007. (Exhibits 4 & 5, attached to Answer.)

On February 28, 2007, Petitioner filed a petition in the California Court of Appeal, which was summarily denied with a citation to In re Rosenkrantz, 29 Cal.4th 616, 658 (2002), on March 16, 2007. (Exhibits 6 & 7, attached to Answer.)

On March 28, 2007, Petitioner filed a petition for review in the California Supreme Court. (Exhibit 8, attached to Answer.) The petition was summarily denied on June 13, 2007. (Exhibit 9, attached to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on June 27, 2007. (Court Doc. 1.) Respondent filed an answer to the petition on March 24, 2008, and Petitioner filed a traverse on April 28, 2008. (Court Docs. 16, 17, 19.)

## STATEMENT OF FACTS[2]

At the time of the commitment offense, Petitioner and his wife, Cherly Wells (the victim), were separated as they had been on numerous occasions in the past and had endured marital difficulties during their seven-year relationship. On September 17, 1991, the victim visited Petitioner at his home with their young son, and after having been there approximately one hour the two became involved in an argument. During the argument, Petitioner obtained a handgun and shot the victim twice in the abdomen and chest. Petitioner stated that their 15-month-old son was in the home at the time but was in another room during the shooting. Later that evening, Petitioner took his wife's body by car to an alley behind 2207 West Florence and left it there. The following afternoon, Petitioner went to the Homicide Division and confessed to the murder. Petitioner provided the location of the gun used during the shooting, and police discovered it from the trash receptacle where he had thrown it.

## DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[2] This information is taken from the transcript of the 2005 parole hearing, which was taken from the Probation Officer's Report. (Exhibit 2, at 9-10 & Exhibit 3.)

2

1  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
2  enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries</u>
3  <u>v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th
4  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>,
5  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
6  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
7  provisions.

8        Petitioner is in custody of the California Department of Corrections pursuant to a state
9  court judgment. Even though Petitioner is not challenging the underlying state court conviction,
10 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
11 threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California</u>
12 <u>Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370
13 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
14 state prisoner in custody pursuant to a state court judgment, even when the petition is not
15 challenging his underlying state court conviction.'").

16       The instant petition is reviewed under the provisions of the Antiterrorism and Effective
17 Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S.
18 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless
19 the adjudication of the claim "resulted in a decision that was contrary to, or involved an
20 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
21 of the United States" or "resulted in a decision that was based on an unreasonable determination
22 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
23 § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

24       As a threshold matter, this Court must "first decide what constitutes 'clearly established
25 Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,
26 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
27 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
28 of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other

3

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the Los Angeles County Superior Court, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is entitled to the following procedural protections: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, as Respondent submits, Petitioner was provided all that is required.  Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, representation by his attorney, and a written decision explaining the reasons that parole was denied.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation

of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added). Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

At Petitioner's second parole hearing in 2005, the BPH denied parole based on the circumstances of Petitioner's commitment offense, his unstable social history including continuous spousal abuse and prior conviction, opposition by the District Attorney's office, and lack of sufficient participation in self-help programming. (*See* Exhibit 2, at 89-91.)

The first and primary factor the BPH relied on was the fact that the second degree murder

demonstrated a lack of disregard for the life and suffering of his wife.[3] (Exhibit 2, 89; Cal. Code Regs. tit. 15, § 2402(c)(1)(B), (C).) "Some evidence" supports the BPH's finding. Under California law, the commitment offense and past convicted offenses alone provide a sufficient basis to deny parole. In re Dannenberg, 34 Cal.4th at 1061, 1095 (2005); Cal. Penal Code § 3041(b). In order to find that an offense was committed "in an especially heinous, atrocious or cruel manner" there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the defendant] of the offense for which he is confined. (Cal. Code Regs. tit. 15, § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005).

In this instance, Petitioner and his wife got into a heated argument over her apparent expression of a desire to attend a concert with another man. Out of anger and frustration, Petitioner obtained a handgun and shot his wife twice, once in the abdomen and once in the chest, while their 15-month-old son was in the house. As his wife lay dying or dead on the floor, Petitioner did not attempt to render aid. (Exhibit 2, at 16.) Just minutes later, Petitioner's aunt who lived in the front apartment, went to the house and asked what she had heard, and Petitioner said it was nothing. (Id. at 16.) He then proceeded to dump his wife's dead body in an alley and attempted to conceal his actions. These factual circumstances support the BPH's finding that the commitment offense demonstrated a callous disregard for the life and suffering of his wife, and was beyond what was minimally necessary to support a conviction for second degree murder. Cal. Code Regs. tit. 15, § 2402(c)(1). In addition, as stated by the BPH, the motive for the killing was very trivial in that Petitioner was merely angry and hurt by something his wife had said.

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

Cal.Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

1 (Exhibit 2, at 89; Cal. Code Regs. tit. 15, § 2402(c)(1)(E).)

2        Next, the BPH considered Petitioner's previous record of violence and unstable social history, which are enumerated circumstances demonstrating unsuitability.  Cal. Code Regs. tit. 15, §§ 2402 (c)(2), 2402(c)(3).  As Petitioner recognized, the relationship between he and his wife was extremely tumultuous, with countless instances of physical violence and periods of separation and reconciliation.  In fact, Petitioner admitted that on previous occasions he had punched, hit, slapped, kicked, and choked the victim.  (Exhibit 2, at 20-24, 67.)  It was undisputed that authorities had responded to a number of incidents of spousal abuse by Petitioner which clearly evinces an ongoing pattern of abuse over a period of seven years.  Indeed, the District Attorney noted that in one past instance, the police report indicated that Petitioner dragged the victim out of a pizza parlor after throwing her to the floor, then punched, kicked, and bit her numerous times in her body and head.  (Id. at 74.)  Furthermore, Petitioner was subsequently convicted for an incident of physical abuse that occurred prior to the commitment offense.

        Next, the BPH found that Petitioner had not participated in sufficient self-help programming to adequately address his documented history of domestic abuse and to develop the skills to deal with his alcohol abuse.  (Exhibit 2, at 91.)  It was undisputed that at the time of the commitment offense, Petitioner had been drinking that day and had a serious alcohol problem.  (Id. at 14-15, 26-27.)  The BPH noted that Petitioner's attempt to learn and understand domestic violence was relatively recent.  (Id. at 58.)  Specifically, the BPH stated that "[t]he skills that [Petitioner] needs in terms of domestic violence, domestic abuse, and the self-help he needs are to be able to understand why he perpetrated this abuse, why he abused someone, and how to deal with the reasons to learn from them so that it will not happen in the future.  And until further progress is made, he continues to be unpredictable and a potential threat to others."  (Id. at  91.)  The BPH noted that to the extent such programming does not exist at CDCR, it was recommended that Petitioner "take it upon [himself] to study, read about domestic abuse, and be prepared next time to take about it, to tell us what you have done in those areas."  (Exhibit 2, at 54.)

8

Finally, the BPH considered the District Attorney's opposition to parole. This was properly considered pursuant to California Penal Code section 3042(a) and (f)(3), and Cal. Code Regs. tit. 15, § 2402(b). (Exhibit 2, at 90-91.)

Contrary to Petitioner's statements, the BPH also considered the factors in support of a finding of suitability and commended Petitioner for gathering and maintaining support from family and friends, being an exemplary inmate having suffered no disciplinary infractions, completion of vocational training including janitorial and catering correspondence course, ongoing participation in YAAP life prisoner support group, parenting, Narcotics Anonymous, Alcoholics Anonymous, participation in Bible course, Emergency Management Institute and KALM program. In addition, Petitioner has displayed an excellent work ethic including exception work reports and laudatory Chronos. (Exhibit 2, at 93-94; Cal. Code Regs. tit. 15, § 2402(d).) However, on balance, the BPH found that these factors did not outweigh the finding of unsuitability.

Petitioner argues that the BPH continues to deny parole based on the circumstances of the commitment offense giving rise to a due process violation. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." The Ninth Circuit reaffirmed its holding in Biggs in the case of Irons v. Carey, where it stated that although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir.2007), *citing* Biggs, 334 F.3d at 916. However, as previously stated, the BPH relied not only on the circumstances of the commitment offense, but also on Petitioner's unstable social history and insufficient self-help programming. Furthermore, because this was only Petitioner's second parole hearing in 2005, and he had only been incarcerated for 12 of his 18 years to life sentence, the concerns expressed in Biggs and

Irons, are not present.  See Biggs v. Terhune, 334 F.3d at 912; Irons v. Carey, 505 F.3d at 853 (the Ninth Circuit upheld the denials of parole based solely on the commitment offense because the prisoner had not yet served the minimum term of his sentence.)

The BPH's findings are supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.The instant petition for writ of habeas corpus be DENIED; and

2.The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 25, 2008**          /s/ Sandra M. Snyder
UNITED STATES MAGISTRATE JUDGE