UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE WESLEY WELLS, | ) | 1:07-CV-926 AWI SMS HC |
| | ) | |
| Petitioner, | ) | ORDER ON FINDINGS AND |
| | ) | RECOMMENDATION, DENYING |
| | ) | PETITION FOR WRIT OF HABEAS |
| v. | ) | CORPUS, DIRECTING CLERK OF COURT |
| | ) | TO ENTER JUDGMENT IN FAVOR OF |
| | ) | RESPONDENT (CERTIFICATE OF |
| K. MENDOZA-POWERS, Warden, | ) | APPEALABILITY UNNECESSARY) |
| | ) | |
| Respondent. | ) | [Doc. 21] |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the Board of Parole Hearings's ("BPH") June 15, 2005, decision finding him unsuitable for a parole date. Petitioner is incarcerated for the second degree murder of his estranged wife, Cheryl Wells.

On August 25, 2008, the Magistrate Judge issued a Findings and Recommendation that the Petition for Writ of Habeas Corpus be DENIED. This Findings and Recommendation was served on all parties and contained notice that any objections were to be filed within thirty (30) days of the date of service of the order. Over thirty (30) days have passed and no party has filed objections.

This Court has conducted a review of the case in accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C). Having carefully reviewed the entire file, the Court agrees with the Magistrate Judge's conclusion that some evidence supports the BPH's decision to deny setting a parole date.

The Court does not agree with the conclusion that the nature of the crime itself was sufficient to justify the denial of a parole date. The circumstances of the crime indicate that Petitioner and his estranged wife had a tumultuous relationship that consisted of physical abuse and arguments.

1

1  See Respondent's Exhibit 2 at 20-24, 67, 74. They were arguing about the wife's desire to see a
2  concert with another man when Petitioner, who had been drinking alcohol, got a gun and shot his
3  wife twice in the abdomen/chest. See id. at 9-13. Uncontradicted testimony indicates that Petitioner
4  leaned down and saw that his wife was dead, that shortly thereafter he told his aunt (who lived in the
5  same duplex) that nothing was wrong, and then attempted to hide his wife's body. See id. at 9-10,
6  16. The circumstances of this offense do not demonstrate "an *exceptionally* callous disregard for
7  human suffering." 15 C.C.R. § 2402(c)(1)(D). Instead, the evidence indicates that Petitioner fired
8  two gunshots that appear to have quickly killed his wife.[1] See id.; cf. In re Burns, 136 Cal.App.4th
9  1318, at 1327-28 (2006) (some evidence indicated callous disregard for suffering where the victim
10 was shot and left in an isolated spot, appeared to have attempted to obtain help, and was pronounced
11 dead approximately four hours after having been shot); In re Smith, 114 Cal.App.4th 343, 367
12 (2003) (no evidence that the inmate had prolonged pain or suffering of the victim after he shot the
13 victim three times in the head).[2] The Court does agree that the motive for the murder was trivial –
14 Petitioner became angry in the course of a marital dispute (which was apparently common) with his
15 estranged wife. However, as the California Supreme Court has recently explained:

> Accordingly, as we held in *Dannenberg*, the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense.[3] Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

22 In re Lawrence, 44 Cal.4th 1181, 1221 (2008) (citations omitted). The Court does not see that the

---

[1] The Court in no way minimizes the death of Cheryl Wells.

[2] *Smith* also noted that, in light of the definition of second degree murder in Penal Code sections 187 and 189, "it can reasonably be said that all second degree murders by definition involve some callousness – i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others." Smith, 114 Cal.App.4th at 366. Since parole is the general rule, the offense must be more than callous and instead must show an "exceptionally callous disregard for human suffering." Id. (citing 15 Cal. Code Regs. § 2402(c)(1)(D)).

[3] Although no longer the critical inquiry, it does not appear to the Court that the viciousness of Petitioner's offense was above the minimum necessary to convict him for second degree murder. Cf. Respondent's Exhibit 2 at 9-10, 16 with Cal. Pen. Code §§ 187, 189.

relative triviality of the motive *alone* justifies a conclusion that Petitioner currently poses an unreasonable threat to society.

However, some evidence supports the BPH's finding that Petitioner: (1) had a history of tumultuous relationships/an unstable social history based on his seven year relationship with the victim;[4] (2) had a prior history of violence with respect to the victim; and (3) Petitioner needed to participate further in programs for understanding and dealing with alcohol abuse and domestic violence. See 15 Cal. Code Regs. §§ 2402(b), (c); Respondent's Exhibit 2 at 20-24, 58-59, 67-68, 74. Of particular note, the evidence indicated that Petitioner's attempt to understand domestic violence was recent, and a medical evaluation (dated January 25, 2005) indicated that Petitioner needed to participate in a program (either inside or outside of prison) for dealing with domestic violence and high conflict relationships. See Respondent's Exhibit 2 at 58-59. The report, although generally favorable, also stated, "If he used alcohol and/or entered into a high conflict relationship, many of the risk factors would change towards increasing my estimate of potential for violence."[5] Petitioner's Exhibit E-1. "Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." 15 Cal. Code Regs. § 2402(b). Given the totality of the BPH's findings, and considering the role that alcohol abuse, domestic abuse, and an unstable social history played in the murder of Petitioner's wife, and the only recent efforts to understand domestic violence, there is some evidence that Petitioner is currently a threat to public safety. See Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Lawrence, 44 Cal.4th at 1221.

Accordingly, IT IS HEREBY ORDERED that:

1. The Findings and Recommendations issued by the Magistrate Judge on August 25, 2008, are adopted to the extent that they are consistent with the above analysis;

---

[4] The BPH was concerned that Petitioner's history was contradictory in that, outside of his home, he appeared to be stable and productive, but inside the home with respect to his wife, there were significant problems. June 15, 2005, Transcript at 90.

[5] Due to an apparent lack of availability of a domestic violence program, the BPH stated that Petitioner needed to speak with the "Psych Department" in order to obtain materials for self-study.

3

2. The Petition for Writ of Habeas Corpus is DENIED;

3. The Clerk of the Court is DIRECTED to enter judgment for Respondent; and

4. A certificate of appealability is not necessary as the instant petition challenged the denial of parole. See Rosas v. Nielsen, 428 F.3d 1229, 1231-1232 (9th Cir. 2005); White v. Lambert, 370 F.3d 1002, 1010-1013 (9th Cir. 2004).

IT IS SO ORDERED.

Dated:   October 29, 2008               /s/ Anthony W. Ishii
                                        CHIEF UNITED STATES DISTRICT JUDGE